UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LANCE E. FELTON                                                  PLAINTIFF

VS.                                CIVIL ACTION NO. 3:18CV74TSL-RHW

CITY OF JACKSON, MISSISSIPPI                          DEFENDANTS
CHIEF LEE VANCE, PERSONALLY AND IN HIS OFFICIAL
CAPACITY; ASSISTANT CHIEF ALLEN WHITE,
PERSONALLY AND IN HIS OFFICIAL CAPACITY;
DEPUTY CHIEF JAMES DAVIS, PERSONALLY AND IN
HIS OFFICIAL CAPACITY; COMMANDER THADDEUS
JONES, PERSONALLY AND HIS OFFICIAL CAPACITY

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants Chief Lee Vance, Assistant Chief Allen White, Deputy Chief James Davis, and Commander Thaddeus Jones, each of whom has been sued in his individual and official capacities, to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Lance E. Felton, who is proceeding pro se, has responded in opposition to the motion. The court, having considered the memoranda of authorities submitted by the parties, concludes that the motion should be granted.

Plaintiff Lance Felton was a police officer with the City of Jackson from December 1995 until his termination in December 2016. Following his termination, he filed the present action alleging that the City and the individual defendants, who are alleged to have been his supervisors in the Jackson Police Department, violated his rights under various federal statutes, including the

Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*; Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*; and the Employment and Reemployment Rights of Members of the Uniformed Services Act (USERRA), 38 U.S.C. § 4301 *et seq*. In addition, he alleges that defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. His claims are grounded in the following alleged facts.

On April 24, 2014, plaintiff, while attempting to apprehend an armed assailant, was forced to fire his weapon. As a result, pursuant to standard department procedure, he was placed on administrative leave with pay pending the outcome of an administrative internal departmental investigation and a mandatory mental evaluation. On May 4, 2014, the consulting psychologist who conducted the mental evaluation reported to former JPD Police Chief Lindsey Horton that plaintiff exhibited a "high level of acute distress" attributable to an "acute stress reaction" following the shooting incident, as a result of which he was deemed not fit to return to duty at that time. The psychologist recommended further therapy for managing plaintiff's distress and provided the name of an expert in treating post-traumatic stress disorder (PTSD) who had indicated a willingness to accept plaintiff as a patient.

2

Plaintiff alleges that the City was clearly apprised of his PTSD and yet failed to provide him the additional counseling he needed. He further asserts that while he spoke with defendants Lee Vance and Commander Thaddeus Jones on several occasions requesting an accommodation, i.e., being allowed to work in a different capacity commensurate with his disability while he was receiving treatment, the City failed to provide him any accommodation.

Plaintiff remained on paid administrative leave for nearly a year and a half, until being advised by letter dated September 17, 2015 from Police Chief Lee Vance, that his paid administrative leave would end on September 19, 2015. In this letter, Chief Vance wrote that once this leave expired and until such time as plaintiff was able to provide a statement from a physician showing he was capable of returning to work, plaintiff could use any accrued sick or personal leave; Vance suggested, alternatively, that plaintiff might be eligible for leave under the FMLA. However, he did not offer any accommodation. As a result, plaintiff was forced to use his vacation and sick leave until those ran out in April 2016. Then, on April 4, 2016, he began using FMLA-approved leave. Plaintiff alleges that on July 5, 2016, a week after his FMLA leave ran out, he was instructed to report to the police chief's office the following day. When he did so, he was met by Assistant Chief Allen White and Deputy Chief

3

James Davis, who ordered him to return to work the following day with a letter from his doctor clearing him for duty, failing which he would be terminated. Even though he had no letter from a doctor clearing him for duty, plaintiff reported to work the following day, and each day thereafter for the next week in the hopes that he would be put to work in another capacity. However, each day he was ordered by Chief Davis to leave since he did not have a fitness-for-duty letter from his doctor. After about a week, Chief Davis and Chief White told him not to return to work since he did not have a letter clearing him for duty. Plaintiff states at that point, he filed a charge of disability discrimination with the EEOC in order to protect his job.

Two months later, plaintiff received a letter from Police Chief Vance dated September 9, 2016 advising of the City's intent to terminate his employment for violations of the City's sick leave and attendance policies. Following an October 11, 2016 pre-termination hearing, plaintiff was terminated, effective December 5, 2016, for alleged attendance and sick leave policy violations. Plaintiff sought review of the termination decision and alleges that at a May 11, 2017 civil service hearing, he was forced, under duress and mounting financial hardship, to accept a premature medical retirement.

On this factual basis, plaintiff purports to state claims against the City and the individual defendants for disability

4

discrimination and retaliation in violation of the ADA and Title VII, and violation of the FMLA, USERRA and his Fourteenth Amendment equal protection rights.

Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted, the complaint "does not need detailed factual allegations," but it must provide the plaintiff's grounds for entitlement to relief, including factual allegations that when assumed to be true "raise a right to relief above the speculative level." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007)). In other words, the complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009) (internal quotation marks and citation omitted).

Title VII

While plaintiff purports to sue for disability discrimination under Title VII, Title VII does not protect against discrimination based on disability but rather applies only to discrimination based on "race, color, religion, sex, or national origin." See 42 U.S.C. § 2000e *et seq*. Avina v. JP Morgan Chase Bank, N.A., 413 F. App'x 764, 766 n.4 (5th Cir. 2011) ("Title VII does not

5

prohibit discrimination because of a disability."). Accordingly, this claim will be dismissed as to all defendants.

ADA

Plaintiff's ADA claims against the individual defendants will also be dismissed. While the Fifth Circuit has not directly addressed the issue, it is the "virtually universal view" that Title I of the ADA does not impose liability on individual employees. See Roman-Oliveras v. Puerto Rico Elec. Power Auth., 655 F.3d 43, 51-52 (1st Cir. 2011) (holding that plaintiff's claims under Title I of the ADA against co-workers were properly dismissed in accordance with the "virtually universal view" that Title I of the ADA, like Title VII, does not impose individual liability); Franklin v. City of Slidell, 936 F. Supp. 2d 691, 703 (E.D. La. 2013) (finding ADA claims against employee defendants "not legally cognizable" since "individuals are not subject to liability under Title I of the ADA") (citations omitted); Jenkins v. Bd. of Educ. of Houston Indep. Sch. Dist., 937 F. Supp. 608, 613 (S.D. Tex. 1996) (explaining that individual defendants "may not be held personally liable under the ADA because they do not fall within the statutory definition of an employer") (citations omitted). Further, since the City of Jackson is named as a defendant, plaintiff's official capacity claims against the individual defendants are superfluous. See Jenkins, 937 F. Supp. at 613 (explaining that "because a suit against a public employee

6

in his or her official capacity is simply another way to sue the public entity, [the plaintiff] cannot show that he would be prejudiced by the dismissal of the individual HISD defendants from this case in their official capacities, as HISD is already a defendant.") (citations omitted); Taylor v. Leggett, No. CV PX 16-115, 2017 WL 1001281, at *3 (D. Md. Mar. 15, 2017) (holding that since plaintiff stated claims against county under ADA, "it would be redundant and superfluous to pursue these same claims against individual defendants who, in their official capacities, simply stand in the shoes of the already-sued County defendant").

FMLA

"The FMLA allows eligible employees to take up to twelve weeks of leave in any one-year period to address ... the employee's own serious health condition." Bryant v. Tex. Dep't of Aging & Disability Servs., 781 F.3d 764, 768 (5th Cir. 2015) (citing 29 U.S.C. § 2612(a)(1)(C)-(D)). Employees who take FMLA leave "are entitled, upon their return, 'to be restored ... to the position of employment held by the employee when the leave commenced' or 'to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.'" Forbes v. Unit Tex. Drilling, L.L.C., 526 Fed. App'x 376, 380 (5th Cir. 2013) (quoting 29 U.S.C.

§ 2614(a)(1)(A)-(B)).  Section 2615(a)(1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any of these rights.  Thus, a § 2615(a)(1) interference-based claim may lie if the employer fails "to restore an employee to the same or equivalent position" upon return from his FMLA leave.  McArdle v. Dell Prods., L.P., 293 Fed. App'x 331, 334 (5th Cir. 2008).

Plaintiff herein has undertaken to assert an FMLA interference claim against defendants, alleging that defendants would not allow him to return to work following his twelve weeks of FMLA-approved leave.  More particularly, he charges defendants conditioned his return to work on his furnishing a fitness for duty certification from his health care provider, yet they failed to provide his health care provider with a list of his essential job functions.  He further asserts that he requested an accommodation so that he could return to work but defendants refused to provide any accommodation.

FMLA regulations state that:

(c) If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another position under the FMLA.  The employer's obligations may, however, be governed by the Americans with Disabilities Act (ADA), as amended.  See § 825.702, state leave laws, or workers' compensation laws.

8

29 C.F.R. § 825.216(c).  According to the allegations of his complaint, plaintiff was forced to take FMLA leave because, due to his chronic PTSD, he was unable to perform the essential duties of his position as a police lieutenant and required an accommodation, namely, assignment to a different position, in order to continue his employment with the police department.[1]  Plaintiff does not allege that his condition improved or changed during the time he was on FMLA leave.  On the contrary, he asserts that when defendants refused to allow him to return to work without a fitness for duty certification, he informed defendants he could not provide the requested certification and instead sought an accommodation, that is, assignment to another position; defendants, though, failed to provide any accommodation and sent him home.[2]  Plaintiff clearly takes the position in his complaint

---

[1] Plaintiff alleges that beginning in March 2016, he called his supervisor, defendant Jones, expressing his desire to return to work and "seeking assistance in receiving accommodations to return to work."  Jones reportedly said he would "look into it and get back" with plaintiff.  Plaintiff alleges that he called to follow up on this on an almost weekly basis for a month to no avail.  When he ran out of vacation and sick leave, "in a last desperate attempt to keep his job," he went on leave under the FMLA.  He alleges that his request for FMLA leave, which included a statement from his health care provider, yet again alerted defendants to his PTSD and to his "various requests for accommodations."

[2] Plaintiff alleges in his complaint that after his FMLA leave ended, he continued to report for work for more than a week, "in the hopes that he would be put to work in another capacity."  Instead, he was repeatedly told to go home.  He asserts that he "requested accommodations several times to return to work," but "[d]efendants failed to provide accommodations [and] instead

9

that "because of a physical or mental condition, including the continuation of a serious health condition," that is, his chronic PTSD, he was "unable to perform an essential function of the position." Id. It follows that he had no right under the FMLA to restoration to his former position or to another position. He has therefore not stated a viable interference claim based on defendants' failure to return him to work. See Warren v. Aetna Life Ins. Co., No. CIV.A.3:97-CV-1030-R, 1999 WL 615095, at *4 (N.D. Tex. Aug. 13, 1999) (stating that "while the accommodation issue is not relevant in FMLA analysis, Plaintiff's inability to perform an essential function deprives her entitlement to restoration of her (former) position").[3] Based on the foregoing,

---

terminated" him.

[3] While he makes no such allegation in his complaint, plaintiff does assert in his response to defendants' motion that "Defendant City of Jackson violated FMLA rules by failing to give Plaintiff a Designation Notice and failing to provide Plaintiff's treating physician, VA Medical Center, with a description of his essential work duties while requiring him to provide a Fitness for Duty Certification," in violation of 29 C.F.R. § 825.312(b). An employer's failure to follow FMLA's notice requirements "may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights," and an employer "may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered." 29 C.F.R. § 825.300(e). Plaintiff's complaint does not reference any failure to provide an FMLA-required notice and he does not purport to assert an FMLA interference claim against any defendant based on any violation of the notice requirements. Even if the court were to interpret his response to defendants' motion as a request to amend to assert such a claim, the court would deny the request

10

it follows that all of the named defendants are entitled to dismissal of the FMLA claim.

USERRA

Likewise, all of the named defendants are entitled to dismissal of the putative USERRA claims. USERRA "provides a comprehensive remedial scheme to ensure the employment and reemployment rights of those called upon to serve in the armed forces of the United States." Morris–Hayes v. Board of Educ. of Chester Union Free Sch. Dist., 423 F.3d 153, 160 (2d Cir. 2005). Among other things, USERRA provides for the prompt reemployment of persons upon their return from their military service. See 38

---

on grounds of futility. See Briggs v. Mississippi, 331 F.3d 499, 508 (5th Cir. 2003) (allowing pro se plaintiff to amend would be futile where amended complaint could not survive a Rule 12(b)(6) motion to dismiss). Plaintiff, according to his own allegations, was not harmed by any failure of defendants to comply with any FMLA notice requirement since even if defendants had provided a designation notice which identified the essential functions of his position, plaintiff has alleged that he was unable to perform all the essential functions of his position, which is the reason he took FMLA leave in the first place and the reason why, when that leave expired, he requested an accommodation that would enable him to return to work. See Bellone v. Southwick-Tolland Reg'l Sch. Dist., 748 F.3d 418, 423 (1st Cir. 2014)(holding that "[l]ate or inadequate notices ... are not actionable unless they harm the employee"); Easley v. YMCA of Metropolitan Milwaukee, 335 Fed. App'x 626, 632 (7th Cir. 2009) (holding that plaintiff "has not shown that the omission of formal notification resulted in harm as is required to recover for a FMLA violation"); Canigiani v. Banc of Am., No. 17-CV-61270, 2017 WL 4390170, at *3 (S.D. Fla. Oct. 3, 2017) (holding that "a plaintiff must demonstrate that she was 'prejudiced' in some way by a defendant's alleged violation of the FMLA," though she "need only demonstrate some harm remediable by either 'damages' or 'equitable relief.'") (internal quotation marks and citations omitted).

U.S.C. § 4312(a) (providing for reemployment rights and benefits for persons whose "absence from a position of employment is necessitated by reason of service in the uniformed services."); 38 U.S.C. § 4313 (providing that persons entitled to reemployment under § 4312 shall be promptly reemployed, and prescribing order of priority for the position such persons receive upon reemployment). It also prohibits discrimination or retaliation against persons because of their service in the military. See 38 U.S.C. § 4311 (person may not be "denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer" because of his or her military membership, application for membership, performance of service, application for service, or obligation to perform military service). These sections provide distinct causes of action. Bradberry v. Jefferson Cty., Tex., 732 F.3d 540, 545 (5th Cir. 2013).

Plaintiff alleges in his complaint that he is a military veteran, and that consequently, under § 4313 of USERRA, the City of Jackson was required "to go further than the ADA by making reasonable efforts to assist [him in] returning to employment," including by accommodating his disability. Section 4313 does require that an employer who is reemploying a qualified service member accommodate a service-related disability or reemploy the service member in an equivalent position. See § 4313(a)(3)

12

(providing for restoration to a different position of a person whose disability is incurred in, or aggravated during his military service, and "who (after reasonable efforts by the employer to accommodate the disability) is not qualified due to such disability to be employed in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by" his military service). However, this is not a freestanding right; rather, it arises only when a service member is entitled to reemployment under § 4312. "Section 4312 sets forth the basic right of a returning veteran to be rehired by his past employer and the basic prerequisites that the veteran must meet in order to enjoy that right. Section 4313 sets forth the position of employment to which the returning veteran must be rehired and requires that the veteran be 'promptly reemployed' in that position." Petty v. Metro. Gov't of Nashville-Davidson Cty., 538 F.3d 431, 440 (6th Cir. 2008). "[T]he express terms of § 4313 make its application contingent ... on the prerequisites of § 4312...." Id. at 443.

In this case, plaintiff does not complain that he was not reemployed when he returned from military service.[4] His complaint

---

[4] His complaint suggests that he had two tours of military duty during his tenure with the police department and was reemployed following both absences. His absence from work following the shooting in April 2014 was not for military duty.

13

is that the City refused to accommodate him when he developed a work-related disability, which had its genesis in his military service. This clearly does not state a claim for violation of USERRA's reemployment provisions.

Plaintiff does not appear to have alleged, or attempted to allege, a claim for discrimination in violation of USERRA. To the extent that he may have sought to do so, such claim necessarily fails as plaintiff does not allege or even intimate that defendants discriminated against him because of his prior military service. Rather, he alleges only that defendants discriminated against him on account of a disability, PTSD, which he alleges was contributed to by his military service. See Carroll v. Delaware River Port Authority, 89 F. Supp. 3d 628 (D.N.J. 2015) (USERRA plaintiff has the initial burden of demonstrating that his military service, as distinct from a disability resulting from service, was a substantial or motivating factor in the employer's decision.").[5]

Fourteenth Amendment Equal Protection Clause

To state a claim for violation of the Equal Protection Clause, a plaintiff must either allege that (1) a state actor

---

[5] The court additionally observes that plaintiff cannot state a cognizable USERRA discrimination claim for failure to accommodate his alleged service-connected disability. Section 4311 "does not require accommodation, which is fundamentally different from an equal-treatment norm." Sandoval v. City of Chicago, Illinois, 560 F.3d 703, 705 (7th Cir. 2009).

14

intentionally discriminated against him because of his membership in a protected class, i.e., a protected class theory, or (2) he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment, i.e., a class of one theory. Gibson v. Tex. Dep't of Ins. – Div. of Worker's Comp., 700 F.3d 227, 238 (5th Cir. 2012). See Integrity Collision Ctr. v. City of Fulshear, 837 F.3d 581, 586 (5th Cir. 2016) (class-of-one equal-protection claim lies where plaintiff claims he was intentionally treated differently from others similarly situated without a rational basis for such difference in treatment) (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)).

In this case, plaintiff does not allege discrimination based on membership in a protected class. Instead, he alleges a violation of his equal protection right "to be free from discrimination based on a qualified disability" because "other officers were afforded accommodations for identical disabilities." In other words, he asserts a "class of one" equal protection claim. The law is clear, however, that "a class-of-one equal-protection claim is unavailable in a public employment context." Id. (citing, among other cases, Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 603, 128 S. Ct. 2146, 170 L. Ed.2d 975 (2008)). Accordingly, this claim will be dismissed as to all defendants.

Conclusion

Based on the foregoing, it is ordered that the motion of defendants Vance, White, Davis and Jones to dismiss the complaint against them in their individual and official capacities for failure to state a claim under Rule 12(b)(6) is granted. Moreover, for the reasons set forth above, the court, sua sponte, dismisses all claims asserted against the City, save the claims asserted under the ADA.[6]

SO ORDERED this 14th day of June, 2018.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[6] The Fifth Circuit has stated that a district court generally must give a pro se plaintiff an opportunity to amend before dismissing his complaint for failure to state a claim, though "it is harmless error to dismiss a case for failure to state a claim without giving the plaintiff an opportunity to amend if the plaintiff has alleged his best case or if the dismissal is without prejudice." Lerma v. Falks, 338 Fed. Appx. 472, 474 (5th Cir. 2009). Here, while plaintiff did not formally request leave to amend, the court, taking into account the additional factual allegations and legal assertions set out in his response to the motion to dismiss, is persuaded that he has already alleged his "best case." Moreover, the court's dismissal of the various claims is not premised on plaintiff's failure to plead sufficient facts, but rather, on the basis that the facts that he has alleged necessarily preclude recovery as a matter of law.

16